UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN TRIANO,

                    Plaintiff,                    Case No. 09-CV-2497 (KMK)

     -v-

GANNETT SATELLITE INFORMATION
NETWORK, INC. & JOHN DOES (1-10),

                    Defendants.

_____

JAMES MORRONE,

                    Plaintiff,                    Case No. 09-CV-2533 (KMK)

     -v-

GANNETT SATELLITE INFORMATION           OPINION AND ORDER
NETWORK, INC. & JOHN DOES (1-10),

                    Defendants.

Appearances:

Vartan Asatrian, Esq.
Vartan Asatrian, P.C.
Harrison, New Jersey
*Counsel for Plaintiffs*

Mark A. Fowler, Esq.
Walter Arthur Saurack, Esq.
Glenn Charles Edwards, Esq.
Justin Evan Klein, Esq.
Satterlee Stephens Burke & Burke LLP
New York, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiffs Steven Triano ("Triano") and James Morrone ("Morrone") (collectively, "Plaintiffs") bring this suit against Gannett Satellite Information Network ("Gannett") and ten unnamed Defendants alleging claims of defamation and intentional and negligent infliction of emotional distress.  Plaintiffs were involved in a hunting accident and bring claims based on a news story concerning the accident.  Gannett moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Gannett's motions are granted.

<u>I. Background</u>

<u>A. Procedural Background</u>

Plaintiffs originally filed these actions in the United States District Court for the District of New Jersey claiming defamation, false light, and emotional distress.  (09-CV-2533 Dkt. No. 1; 09-CV-2497 Dkt. No. 1.)[1]  Gannett filed Motions to Dismiss or, in the alternative, to Transfer Venue.  (*Triano* Dkt. No. 1; *Morrone* Dkt. No. 1.)  Gannett's Motions to Dismiss were denied without prejudice and the Motions to Transfer Venue, to the Southern District of New York, were granted.  (*Triano* Dkt. No. 1; *Morrone* Dkt. No. 1.)  On September 18, 2009, Gannett filed Motions to Dismiss with this Court.  (*Triano* Dkt. No. 12; *Morrone* Dkt. No. 13.)  The Motions were fully submitted as of February 2, 2010.  (*Triano* Dkt. No. 17; *Morrone* Dkt. No. 18.)  On May 4, 2010, the Court, sua sponte, ordered Plaintiffs to show cause why the case should not be dismissed for lack of jurisdiction as the pleadings were insufficient to establish either subject matter or diversity jurisdiction, and also because the pleadings failed to name a proper

---

[1] To avoid confusion, the Court shall refer to documents from 09-CV-2497 as "*Triano* [Document Name]," and documents from 09-CV-2533 as "*Morrone* [Document Name]." Documents filed in both cases that have both the same name and the same content shall be referred to simply by the document name.

defendant.[2]  (Order (May 4, 2010).)  The Court also invited Plaintiffs to "state whether they

object to the Court consolidating the two actions."  (*Id.* at 6.)  Plaintiffs responded by stating that

they had no objection to consolidation, and that they would file amended complaints.  (Letter

from Martin V. Asatrian, Esq., to the Court (May 18, 2010).)  Though the Court has not formally

consolidated the cases, it will consider them together.  On June 21, 2010, Gannett informed the

Court that it was in possession of the Amended Complaints, though the Amended Complaints

had not been filed, and that it wished to proceed with its Motions to Dismiss without the need for

amended briefing.  (Letter from Mark. A Fowler, Esq., to the Court (June 21, 2010).)  On June

23, 2010, the Court endorsed Gannett's letter and ordered Plaintiffs to file their Amended

Complaints.  (*Id.* at memorandum endorsement.)  This Plaintiffs still have not done, so the Court

will respectfully direct the Clerk of the Court to file them on Plaintiffs' behalf.

    The Court has authority to "dismiss[] [] an action or claim for failure to prosecute or

failure to comply with court orders."  *Ptak Bros. Jewelry, Inc. v. Ptak*, No. 06-CV-13732, 2009

WL 807725, at *7 (S.D.N.Y. Mar. 30, 2009).  However, there is a "preference for resolving

cases on their merits."  *Id.*  In this case, Gannett has actual notice of the Amended Complaints

and wishes the Court to proceed.  As the Court also has copies of the Amended Complaints, the

Motions shall be resolved as if the Amended Complaints had been timely filed.  Furthermore,

---

[2] The original Complaint named as defendants "The Journal News," and "Lohud.Com
Inc.," as well as unnamed defendants.  (*Morrone* Compl. 1; *Triano* Compl. 1.)  Neither of those
named defendants, however, is a stand alone business entity.  (Decl. of Robert T. Fredericks in
Supp. of Mot. to Dismiss ("Fredericks Decl.") ¶ 3.)  Both are owned by, or subsidiaries of,
Gannett.  (*Id.*)  Additionally, though Plaintiffs asserted both federal question and diversity
jurisdiction, the Complaints pled only state law claims, and, rather than giving a domicile for the
named defendants, merely asserted that they were "businesses engaged in media operations
throughout the United States" (*Triano* Compl. 1), or merely "businesses engaged in media
operations," (*Morrone* Compl. 1).

though the only filed pleadings are facially deficient in establishing jurisdiction, where subject matter jurisdiction is at issue, the Court is "permitted to look to materials outside the pleadings." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).  Here, there is diversity jurisdiction, as Plaintiffs are New York citizens, Gannett is a Virginia corporation, and the amount in controversy allegedly exceeds $75,000.  (*Triano* Am. Compl. § II; *Morrone* Am. Compl. § II); *see also* 28 U.S.C. § 1332.

    B. Factual Background

       For the purposes of these Motions, the Court accepts the allegations in the Amended Complaints as true.  On November 19, 2007, Plaintiffs, who are friends, were hunting together in Harpersfield, New York.  (*Morrone* Am. Compl.§ V, ¶ 1.)[3]  Morrone was tracking a deer that had been wounded by another hunter when Triano was "accidentally wounded" by being shot in the lower left part of the knee.  (*Id.* § V, ¶¶ 2-3.)  When Morrone realized that Triano had been shot, he immediately called 911.  (*Id.* § V, ¶ 4.)  According to the Amended Complaints, Triano is currently recovering from his injury.  (*Id.* § V, ¶ 6.)  On November 23, 2007, Gannett's subsidiary, The Journal News, and its online entity, www.lohud.com, published an on-line article about this incident with the headline "Purchase Man Charged with Felony in Hunting Death."[4]

---

    [3] The two Amended Complaints are, for most paragraphs, substantively identical to each other, and so the Court shall not cite to both unless necessary.

    [4] The full text of the article reads as follows (Fredericks Decl. Ex. A):

    A 44-year-old Purchase man is accused of shooting his hunting partner Monday in the upstate town of Harpersfield, police said.

    James J. Morrone was charged with first-degree reckless endangerment, a felony; prohibited use of a weapon, a misdemeanor; and hunting without a license, a violation, according to state police at Margaretville.

(*Id.* § V, ¶ 9 (internal quotation marks omitted).)  Plaintiffs only allege that the statement in the

headline that a "Hunting Death" occurred is false; no other statement in the article is alleged to

be false, let alone defamatory.  (*Id.* § V, ¶ 10.)  A printed version of the article appeared in the

November 23, 2007, issue of the Journal News, and contained an accurate headline: "Purchase

Man, 44, charged in upstate hunting accident."  (Fredericks Decl. Ex. B.)[5]

## II. Discussion

### A. Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's

factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  *Gonzalez*

*v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*,

514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint

pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all

---

Steven Triano, 41, of West Harrison was hunting with Morrone in Harpersfield –
about 65 miles southwest of Albany – when Morrone shot at a deer and hit Triano
in the left leg, state police said.

Both men were reported to be wearing camouflage rather than red or orange, state
police said.

Because deer can't tell red or orange from green and brown, the state Department
of Environmental Conservation encourages all hunters to wear the vivid colors as
a safety measure against accidental shootings.

Triano was taken to A.O. Fox Memorial Hospital in Oneonta and later transferred
to Westchester Medical Center in Valhalla, police said.

His condition was not available last night.  Attempts to reach Morrone and Triano
were not immediately successful last night.

[5] The Court may take judicial notice of "the *fact* that press coverage . . . contained certain
information, without regard to the truth of [its] contents."  *Staehr v. Hartford Fin. Servs. Group,
Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (emphasis in original).

reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.

Simply put, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. If a plaintiff "ha[s] not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (internal citation omitted) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))).

Finally, in adjudicating a Rule 12(b)(6) motion, a court must confine its consideration to "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference" or facts of which the Court may take judicial notice. *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). In this case, Plaintiffs have not attached the actual article to the

Amended Complaints, and Gannett wishes the Court to consider the article in deciding its Motions.  The Court may consider the online article because it forms the entire basis for Plaintiffs' claims, and Plaintiffs relied on and referred to the article in bringing their claims.  *See Svensson v. Securian Life Ins. Co.*, No. 08-CV-10148, 2010 WL 1544352, at *2 (S.D.N.Y. Mar. 31, 2010) (considering an insurance policy when the complaint "explicitly refer[ed] to, and relie[d] on" the policy); *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 665 (S.D.N.Y. 2010) (noting that a court may consider "documents that the plaintiff *relied on in bringing suit* and that are either in plaintiff's possession or that the plaintiff knew of when bringing suit" (emphasis added)); *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159 (S.D.N.Y. 1992) (noting that, on a motion to dismiss, a court may consider an allegedly defamatory article referred to in the complaint even though the article was not attached to the complaint).

B. Choice of Law

When a case alleging state law claims is transferred from one federal district to another, as happened here, the Court is "obligated to apply the state law that would have been applicable if the case had not been transferred." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 190 (2d Cir. 2009). New Jersey, the original forum for this dispute, "continu[es] to denominate [its choice of law] standard as a kind of government interest test, [but] now appl[ies] the Second Restatement's most significant relationship standard in tort cases." *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008).  "Under that standard, the law of the state of the injury is applicable unless another state has a more significant relationship to the parties and issues." *Id.*  The Court cannot say that no state other than New York has an interest in this litigation, as Gannett is a Virginia corporation and the article, through being published on the internet, was published in every state. However, New York is both the state where the effect of the alleged injury was felt, and the state

7

with the most significant relationship to the injury as the Plaintiffs are New York residents, and

Gannett's economic (and allegedly tortious) activity was targeted at New York, *see* Home Page,

LoHud.com, http://www.lohud.com (last visited Sept. 28, 2010) (styling itself as the website for

"New York's Lower Hudson Valley"). Moreover, no Party disputes that New York law governs

this action. *See Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (applying New

York law when no party disputed that it applied).

  C. Analysis

    1. Defamation

  Plaintiffs style their first count as alleging "defamation/slander/libel/false light."

(*Morrone* Am. Compl. at third unnumbered page (internal formatting omitted).) To the extent

that Plaintiffs allege a false light invasion of privacy claim, their claims are dismissed because

no such action exists under New York law. *See Bloom v. Fox News of L.A.*, 528 F. Supp. 2d 69,

73 n.4 (E.D.N.Y. 2007) ("To the extent plaintiff is complaining of how [he] was *portrayed*, he is

asserting a false light invasion of privacy claim, which is not cognizable under New York law."

(emphasis in original)); *Matthews v. Malkus,* 377 F. Supp. 2d 350, 358-59 (S.D.N.Y. 2005)

(same).

  Plaintiffs also claim that Defendant defamed them by publishing the online article.

(*Morrone* Am. Compl. at third unnumbered page.) "Defamation is the injury to one's reputation

either by written expression, which is libel, or by oral expression, which is slander." *Idema v.

Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x 676 (2d Cir. 2002).

Plaintiffs must establish five elements to recover on this claim: "1) a written defamatory

statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either

negligence or actual malice depending on the status of the libeled party); 4) falsity of the

defamatory statement; and 5) special damages or per se actionability (defamatory on its face)."
*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000); *see also Boehner v. Heise*, No. 03-CV-5453, 2010 WL 3291636, at *6 (S.D.N.Y. Aug. 12, 2010) (outlining the same requirements as four elements).

Plaintiffs allege a false statement in the headline of the article only. (*Morrone* Am. Compl. § V, ¶¶ 9-10.) Thus, the threshold inquiry is whether Plaintiffs have established that the headline alone contains a defamatory statement of fact concerning them. "In order to determine whether the headline of a concededly truthful article is actionable[,] . . . the [C]ourt must initially determine whether the headline was a fair index of the article in which it appears; if it was, then the headline is not actionable." *Mondello v. Newsday, Inc.*, 774 N.Y.S.2d 794, 794 (App. Div. 2004); s*ee also White v. Berkshire-Hathaway, Inc.*, 802 N.Y.S.2d 910, 912 (Sup. Ct. 2005) (same). This is a legal question for the Court. *Mondello*, 774 N.Y.S.2d at 794; *White*, 802 N.Y.S.2d at 912. In this case, the headline is not a "fair index" of the article, because the article stated that Triano's "condition was not available last night," and that "[a]ttempts to reach Morrone and Triano were not immediately successful last night," which contradicts the headline's statement that someone had died. (Fredericks Decl. Ex. A.) The article also correctly noted that Triano had been shot "in the left leg." (*Id.*) However, "a headline that does not directly name the plaintiff is not independently actionable." *White*, 802 N.Y.S.2d at 912; *see also Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 698 (S.D.N.Y. 1995) (noting that though a headline can be defamatory standing alone, it cannot be so when it does not name the plaintiff), *aff'd*, 119 F.3d 1018 (2d Cir. 1997); *Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co.*, 893 N.Y.S.2d 414, 418 (App. Div. 2009) (noting that "plaintiff failed to sufficiently allege that the [purportedly defamatory materials] . . . were of and concerning plaintiff" when the materials

9

"did not name plaintiff" (internal quotation marks omitted)); *Trudeau v. Plattsburgh Publ'g Co.*, 202 N.Y.S.2d 412, 413 (App. Div. 1960) ("There is nothing in the headline naming or identifying any person.  Reading the headline alone no one is defamed."); *Veritas Capital Mgmt. L.L.C. v. Campbell*, No. 650058/08, 2008 WL 5491146, at *13 (N.Y. Sup. Ct. Nov. 24, 2008) (noting that statements were "not sufficiently of and concerning plaintiffs" to constitute defamation when "the statements do not refer to plaintiffs"), *aff'd sub nom.*, 905 N.Y.S.2d 589 (App. Div. 2010).  Accordingly, because the headline mentioned neither plaintiff, Plaintiffs cannot satisfy the first element of a defamation claim based on the headline alone.

Nowhere in the Amended Complaints, or in their briefing, do Plaintiffs make arguments based upon the full text of the article.  Nonetheless, the Court notes that the full text of the article did identify both Plaintiffs.  (Fredericks Decl. Ex. A.)  When determining whether a statement is defamatory, "[c]ontext is key," and "[t]he dispositive inquiry is whether a reasonable reader could have concluded that the article[] w[as] conveying [defamatory] facts."  *Finkel v. Dauber*, 906 N.Y.S.2d 697, 701, 702 (Sup. Ct. 2010) (internal emphasis, brackets, and quotation marks omitted); *see also Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993) (noting that the facts a reasonable reader would have concluded were being conveyed must be defamatory); *Springer v. Almontaser*, 904 N.Y.S.2d 765, 766 (App. Div. 2010) ("The statements alleged to be defamatory must be viewed in their context to determine whether a reasonable person would view them as conveying any facts about the plaintiff . . . .").  Here, a reasonable person, having read the headline and the article, would not conclude that Triano had been killed.  For example, a reasonable person would not have concluded that Gannett was attempting to contact Triano after Triano's death; nor would a reasonable person have concluded, when Gannett stated that Triano's "condition was not available last night," that Gannett was referring to the condition of

10

Triano's corpse.  In other words, even if the headline was literally false, the full context of the article contradicted the headline and was substantially true such that the reasonable reader likely would conclude that the headline was inaccurate, and not that Morrone shot and killed Triano.  Thus, to the extent that the article made a statement of fact, it was not defamatory as to either plaintiff.  *See Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) (noting that falsity is "assessed on the publication as a whole, not isolated portions of it, and a defendant is held only to a standard of substantial, not literal, accuracy" (internal quotation marks omitted)); *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, No. 08-CV-9117, 2010 WL 1507792, at *1 (S.D.N.Y. Apr. 15, 2010) ("[U]nder New York law, it is not necessary to demonstrate complete accuracy to defeat a charge of libel.  It is only necessary that the gist or substance of the challenged statements be true." (internal quotation marks omitted)); *Ferlito v. County of Suffolk*, No. 06-CV-5708, 2007 WL 4180670, at *4 (E.D.N.Y. Nov. 19, 2007) ("A defamatory statement of fact is one that tends to expose the plaintiff to public contempt, . . . or disgrace or induce an evil opinion of him . . . . [I]f it merely constitutes a general reflection on a person's character or qualities, it [does] not . . . amount to actionable defamation even though it may be unpleasant . . . ." (internal quotation marks and citation omitted)); *Matovcik v. Times Beacon Record Newspapers*, 849 N.Y.S.2d 75, 78 (App. Div. 2007) ("The test of whether a statement is substantially true is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." (internal quotation marks omitted)).

Finally, though this is relevant only to Triano, the law in New York is that prematurely reporting a person's death is not defamatory.  *See Cohen v. N.Y. Times Co.*, 138 N.Y.S. 206, 210 (App. Div. 1912) (noting that premature publication of death "may be unpleasant; it may annoy or irk the subject thereof; it may subject him to joke or jest or to banter from those who knew

him or knew of him, even to the extent of affecting his feelings," but that it is not defamatory); *Rubinstein v. N.Y. Post Corp.*, 488 N.Y.S.2d 331, 333 (Sup. Ct. 1985) ("Death is an honorable estate, so that no one is demeaned or belittled by the report of his or her death."); Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems § 2:4.1 (4th ed. 2010) ("[T]he false assertion that a person has fallen victim to crime, disease, or the grim reaper, although usually unwelcome, is ordinarily thought not to injure his or her reputation." (internal footnote omitted)).

### 2. Emotional Distress

Plaintiffs' second cause of action is for intentional and/or negligent infliction of emotional distress.  (*Morrone* Am. Compl. at fifth unnumbered page.)  Gannett seeks dismissal of this count, and Plaintiffs do not respond.  It follows that Plaintiffs have abandoned and waived this claim.  *See Bowen v. County of Westchester*, No. 07-CV-6277, 2010 WL 1529397, at *13 (S.D.N.Y. Mar. 31, 2010) (noting that plaintiffs waived their claim when they made "no response, legal or otherwise" to defendant's "contention that th[e] claim [was] without merit"); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).[6]

---

[6] The Court notes with disappointment that this is part of a wider problem of woefully inadequate submissions.  Plaintiffs do not cite a single case in support of any of their claims, and their Amended Complaints are full of conclusory statements.  When considered together with Plaintiffs' failure to file their Amended Complaints despite being ordered by the Court to do so, Plaintiffs' failure to allege a basis for jurisdiction in their original Complaints, and Plaintiffs' baffling original filings in the District of New Jersey, where no Party resides, and where no conduct occurred, frustration sets in.  Gannett has not requested sanctions, however, and so the Court does not discuss whether they would be appropriate in this case.

12

However, even considering the merits of Defendant's motions as they relate to this claim, it is clear that the motions should be granted.  "It is nearly impossible in New York for a plaintiff to state a viable claim for intentional infliction of emotional distress."  *Idema*, 120 F. Supp. 2d at 370.  In addition, "New York courts have consistently held that a plaintiff may not maintain a separate claim for intentional infliction of emotional distress grounded in the same facts as a claim for libel."  *Id.*; *see also Hirschfeld v. Daily News, L.P.*, 703 N.Y.S.2d 123, 124 (App. Div. 2000) ("[C]laims of emotional distress were properly dismissed, [when] they f[e]ll within the ambit of other traditional tort liability which . . . is reflected in plaintiff's cause[] of action sounding in defamation." (internal quotation marks and brackets omitted)); *see also Idema*, 120 F. Supp. 2d at 370 ("It makes no difference that plaintiff's libel claim is insufficient.").  Moreover, to intentionally inflict emotion distress under New York law, a defendant must engage in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Marilyn S. v. Indep. Grp. Home Living Program, Inc.*, 903 N.Y.S.2d 403, 406 (App. Div. 2010) (internal quotation marks omitted).  At most, what Plaintiffs have alleged is that Gannett made a mistake.  There is no plausible claim that this mistake was outrageous or atrocious.

Furthermore, negligent infliction of emotional distress requires, in this case, allegations of a duty Gannett owed to Plaintiffs, and a breach causing Plaintiffs to fear for their safety or to be unreasonably endangered.  *See Park v. Wolff & Samson, P.C.*, 867 N.Y.S.2d 424, 425 (App. Div. 2008) (noting that claims for negligent infliction of emotional distress should be dismissed absent "an allegation showing [a] kind of duty"); *Schultes v. Kane*, 856 N.Y.S.2d 684, 686-87 (App. Div. 2008) ("A cause of action for negligent infliction of emotional distress generally

13

requires plaintiff to show a breach of duty owed to her which unreasonably endangered her physical safety, or caused her to fear for her own safety . . . ." (internal quotation marks omitted)). Defendants owed no such duty to Plaintiffs. *See Doe v. County of Wayne*, 689 N.Y.S.2d 802, 803 (App. Div. 1999) (noting that journalist and newspaper did not breach a duty that could sustain a negligent infliction of emotional distress claim to victims of criminal act that was the subject of their article); *Rubinstein*, 488 N.Y.S.2d at 335 (noting that there is "no basis in the law upon which . . . the person reported dead . . . can recover damages for the negligent infliction of emotional injuries"); *see also Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 315-16 (S.D.N.Y. 2005) (dismissing a claim for negligent infliction of emotional distress when plaintiff had failed to allege that defendant owed a "direct duty" to plaintiff beyond the general duty to avoid negligently harming people (internal quotation marks omitted)). Accordingly, this cause of action is dismissed.

### III. Conclusion

Gannett's Motions to Dismiss are granted. The Clerk of the Court is respectfully requested to docket the Amended Complaints, terminate the relevant motions (*Morrone* Dkt. No. 13; *Triano* Dkt. No. 12), and close these cases.

SO ORDERED.

Dated:       September 29 2010
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

14

Service List (by ECF):

Vartan Asatrian, Esq.
Vartan Asatrian, P.C.
235 Harrison Avenue
Harrison , NJ 07110
vartanasatrian@aol.com
*Counsel for Plaintiffs*

Mark A. Fowler, Esq.
Walter Arthur Saurack, Esq.
Glenn Charles Edwards, Esq.
Justin Evan Klein, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York , NY 10169
mfowler@ssbb.com
wsaurack@ssbb.com
gedwards@ssbb.com
jklein@ssbb.com
*Counsel for Defendants*